THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GLORIA WILLIAMS, Defendant-Appellant.

First District (2nd Division)    No. 79-2279

Opinion filed December 30, 1980.

Ralph Ruebner and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Defendant, Gloria Williams, was charged in an information with two counts of aggravated battery. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4.) On October 12, 1976, Judge Richard L. Curry declared defendant unfit to stand trial after an evidentiary hearing. Without any further hearings but after receipt of two psychiatric reports which stated that defendant was not fit to stand trial, Judge Albert Green accepted defendant's plea of guilty on April 11, 1979, to the charge of aggravated battery. Defendant was sentenced to 30 months' felony probation conditioned on 52 weekends of periodic imprisonment and continued psychiatric consultation. Defend-

ant's motion to vacate the guilty plea was denied after a hearing on November 29, 1979. From the denial of that motion defendant appeals, presenting the following issues for review: (1) whether, following a judicial determination that defendant was unfit to stand trial, the trial court could properly accept defendant's plea of guilty without a formal restoration hearing; (2) whether defendant received effective assistance of counsel; (3) whether the trial court committed reversible error in interrupting defendant's statement in mitigation of her sentence; and (4) whether there was substantial compliance with Supreme Court Rule 604(d). For the reasons hereinafter set forth we reverse the trial court's order denying defendant's motion to vacate her plea of guilty.

The facts relevant to the disposition of this appeal are as follows. On January 19, 1976, defendant, Gloria Williams, was arrested and charged with aggravated battery against Barbara Jean Taylor. The complaint alleged that on December 13, 1975, defendant threw a caustic liquid onto Taylor's face and head. On January 26, 1976, defendant was formally charged in an information with two counts of aggravated battery, one alleging great bodily harm and the other permanent disfigurement. At the arraignment on February 3, 1976, Judge Richard L. Curry appointed the public defender's office to represent defendant who entered a plea of not guilty.

Pursuant to court order, defendant was examined by Dr. Reifman from the Psychiatric Institute on August 26, 1976. In his report to Judge Benefiel filed on September 7, 1976, Dr. Reifman stated that because of her schizophrenia defendant did not understand the nature of the charges against her or the purpose of the proceedings and was unable to cooperate with counsel in her own defense. In Dr. Reifman's opinion defendant was not mentally fit to stand trial and was in need of mental treatment. Following an evidentiary hearing on September 24, 1976, Judge Curry entered an order on October 12, 1976, finding defendant unfit to stand trial. Judge Curry also ordered defendant to be brought before a judge of the Mental Health Division of the court for a hearing pursuant to the Mental Health Code (Ill. Rev. Stat. 1975, ch. 91½, par. 1—1 et seq.) to determine whether she was a person in need of mental treatment. Although the record does not indicate whether that hearing was ever held, defendant apparently received outpatient psychiatric treatment at Roseland Mental Health Center and Jackson Park Hospital. On December 3, 1976, Judge Curry ordered another psychiatric examination by Dr. Reifman, which took place on December 27, 1976. Dr. Reifman concluded that defendant was still unfit to stand trial.

On February 23, 1977, Judge Green ordered Dr. Jewett Goldsmith of the Illinois State Psychiatric Institute to examine defendant. Although we have not been apprised of the results of that examination, defendant, on July 17, 1978, was examined for a third time by Dr. Reifman who

reported that "This previously adjudicated not mentally fit for trial defendant is now mentally FIT to stand trial. She understands the nature of the charge, the purpose of the proceedings and is able to assist counsel in her own defense. No opinion with respect to sanity." After Dr. Reifman's report was filed on July 20, 1978, defendant moved for further psychiatric examination and Dr. Goldsmith again saw her on November 3, 1978. He diagnosed defendant as a "Chronic Ambulatory Schizophrenic" who did not manifest "any evidence of potential physical harmfulness to herself or others or inability to care for herself by reason of her mental illness." Defendant told Dr. Goldsmith that she believed she was fit to stand trial but preferred to be found unfit because then "her charges would be dropped." In Dr. Goldsmith's opinion defendant was "capable of understanding the nature and purpose of the proceedings against her" and "*capable* of cooperating with counsel." He concluded that "she is considered fit to stand trial and not in need of mental treatment at this time." This report was submitted to the trial court on November 9, 1978. The court noted Dr. Goldsmith's conclusion that defendant was not fit to stand trial. Defendant's attorney, assistant public defender John Ryan, then informed the court that he had experienced "extreme difficulty in preparing a defense to this case" because he did not yet "know what happened." Because of the length of time the case had been on the call, however, Ryan asked for "an opportunity to sit down with Miss Williams. We will have to set it down for trial." The court stated, "That is the purpose of our hearing today." The case was continued to December 16, 1978.

Defendant appeared for trial on April 11, 1979, at which time she entered a plea of guilty to both counts of aggravated battery. Pursuant to pretrial conference the court sentenced defendant to 30 months' felony probation conditioned on 52 weekends of periodic imprisonment and continued psychiatric consultation at Jackson Park Hospital. Defendant's motion to vacate her plea of guilty was denied after a hearing on November 29, 1979.

On October 12, 1976, Judge Curry signed an order finding defendant unfit to stand trial. This order was based on an evidentiary hearing which was held on September 24, 1976. Defendant's first contention on appeal is that once she had been adjudged unfit to stand trial, it was constitutional error for the trial court thereafter to accept her guilty plea without a subsequent judicial determination that she had become fit to stand trial or be sentenced. We agree. [1]

---

[1] At the outset we note that "the test of competency [*i.e.*, fitness] must be the same whether the defendant is standing trial or pleading guilty." *People v. Heral* (1976), 62 Ill. 2d 329, 334, 342 N.E.2d 34.

Section 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—2) [2] provides:

"(a) If the defendant is found unfit to stand trial or be sentenced, the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, [3] and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be in need of mental treatment, shall be determined in accordance with such Act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition.

(b) A defendant hospitalized under this Section shall be returned to the court not more than 90 days after the court's original finding of unfitness, and each 12 months thereafter. At such reexamination the court may proceed, find, and order as in the first instance under paragraph (a) of this Section. If the court finds that defendant continues to be unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. *Either the State or the defendant may at any time petition the court for review of the defendant's fitness.*

(c) A person found unfit under the provision of this Article who is thereafter sentenced for the offense charged at the time of such finding, shall be credited with time during which he was confined in a public or private hospital after such a finding of unfitness. If a defendant has been confined in a public or private hospital after a finding of unfitness under Section 5—2—6 for a period equal to the maximum sentence of imprisonment that could be imposed under Article 8 for the offense or offenses charged, the court shall order the charge or charges dismissed on motion of the defendant, his guardian, or the Director of the Department of Mental Health.

(d) An order finding the defendant unfit is a final order for

---

[2] Effective December 28, 1979, sections 5—2—1 and 5—2—2 were repealed and replaced with article 104, "Fitness For Trial, To Plead Or To Be Sentenced." (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 104—10 *et seq.*) This appeal is decided under the former law.

[3] Effective January 1, 1979, the Mental Health Code of 1967 (Ill. Rev. Stat. 1977, ch. 91½, par. 1—1 *et seq.*) was repealed and replaced with the Mental Health & Developmental Disabilities (MHDD) Code (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*).

purposes of appeal by the State or by the defendant." (Emphasis added.)

Following its adjudication that defendant was unfit to stand trial, the trial court, in conformity with the requirements of Section 5—2—2(a), remanded defendant to the Department of Mental Health for a hearing to determine if she was in need of mental treatment. The record does not indicate whether that hearing was held or if it was, what the results of the hearing were. Nevertheless, defendant apparently was not ordered hospitalized, although she did receive outpatient psychiatric care and remained out on bond. The fact that defendant may not have been hospitalized in a hearing under the Mental Health Code does not, of course, constitute a judicial finding of fitness to stand trial: "The Mental Health Code of 1967 deals with findings of need for mental treatment and the need for hospitalization * * * and has no hearing upon determinations of redeterminations of fitness to stand trial." *People v. Manning* (1979), 76 Ill. 2d 235, 240, 390 N.E.2d 903.

■■ Section 5—2—2(b) provides that in the event a defendant is ordered hospitalized under the Mental Health Code, either the State or the defendant may at any time petition the court for review of the defendant's fitness. The review of fitness allowed by this section has been construed to apply to defendants who have never been hospitalized. (*People v. Ealy* (1977), 49 Ill. App. 3d 922, 939, 365 N.E.2d 149.) Although the legislature has made many changes in the procedures to be followed in determining a person's fitness to stand trial, our courts have consistently held that evidence of a prior adjudication of unfitness raises a presumption that the condition of unfitness remains. (*People v. Lang* (1975), 26 Ill. App. 3d 648, 653, 325 N.E.2d 305; *People v. Santoro* (1973), 13 Ill. App. 3d 426, 301 N.E.2d 175; *People ex rel. Suddeth v. Rednour* (1965), 33 Ill. 2d 278, 285, 211 N.E.2d 281.) This presumption continues until there has been a valid subsequent hearing adjudicating him fit. (*People v. Johnson* (1973), 15 Ill. App. 3d 680, 685, 687, 304 N.E.2d 688; *People v. McKinstray* (1964), 30 Ill. 2d 611, 617, 198 N.E.2d 829; *People v. Reeves* (1952), 412 Ill. 555, 560, 107 N.E.2d 861.) Although there is no longer a statutory right to a jury trial in a restoration hearing (Ill. Rev. Stat. 1975, ch. 38, par. 1005—5—2(b); *People v. Manning* (1979), 76 Ill. 2d 235, 390 N.E.2d 903), all of the previously cited cases envision an adversarial hearing and have disapproved of verdicts of fitness based solely upon unsupported stipulations, agreements pleas made by the accused or his counsel.

■■ Here, the People argue that there was a judicial finding of fitness on November 9, 1978, but an examination of the transcript of the proceedings for that date does not support this argument. The trial court stated that the purpose of the hearing was to set a trial date. Although the court read into the record Dr. Goldsmith's conclusion that defendant was now fit to stand

trial, the court entered no order, written or oral, finding defendant fit to stand trial. Once there was a judicial determination that defendant was unfit to stand trial, that determination could not be overruled solely by the court's acknowledgement of psychiatric opinions that indicated otherwise. *People v. Davis* (1975), 25 Ill. App. 3d 1007, 1013, 324 N.E.2d 58.

Based upon the trial court's receipt of reports of defendant's medical psychiatric history and the conclusions of Drs. Reifman and Goldsmith's final examinations, the State argues that the court made an "implied finding of fitness" on November 9, 1978. Assuming that such a finding may be implied from the record before us, it falls far short of what the law requires in a restoration of fitness hearing.

Section 5—2—1(e), (f), (g), sets forth the types of evidence relevant in determining a defendant's fitness (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(e), (f), (g)):

"(e) Subject to the rules of evidence, matters admissible on the question of the defendant's fitness to stand trial or be sentenced may include, but shall not be limited to, the following items:

(1) the defendant's social behavior or abilities; orientation as to time and place; recognition and correlation of persons, places and things; performance of motor processes; and behavorial functions, habits, and practices;

(2) the defendant's knowledge and understanding of the nature of the charge; of the nature of the proceedings; of the consequences of a finding, judgment or sentence; of the courtroom facilities and personnel; and of the functions of the participants in the trial process;

(3) the defendant's abilities before and during trial to observe, recollect, consider, correlate and narrate occurrences, especially those concerning his own past and those concerning the incidents alleged; to communicate with counsel; and to reason and make judgments concerning questions and suggestions of counsel before trial and in the trial process.

(f) Any party may introduce evidence as to the defendant's fitness.

(g) If requested by the State or defendant, the court shall appoint a qualified expert or experts to examine the defendant and *testify* regarding his fitness * * *." (Emphasis added.)

These requirements apply not only to the initial determination of fitness but also to restoration hearings. (*People v. Coppersmith* (1977), 47 Ill. App. 3d 67, 70-71, 361 N.E.2d 773; *People v. Welsh* (1975), 30 Ill. App. 3d 887, 889, 333 N.E.2d 572.) As the court observed in *People v. Davis*:

"It would be absurd to impose formal evidentiary and procedural

requirements and safeguards upon the initial judicial determination that a defendant is or is not fit to stand trial or be sentenced, and then (assuming the defendant has been found to be unfit at such a formal proceeding) permit an informal determination that the defendant has been 'restored' to fitness to stand trial or be sentenced." 25 Ill. App. 3d 1007, 1014.

■■ Once there has been a judicial determination that a defendant in a criminal case is unfit to stand trial or be sentenced, that determination cannot be reversed without another judicial determination that the defendant is fit to stand trial or be sentenced. (*Davis*, at 1014.) The conviction of an accused person while she is legally unfit to stand trial violates the most fundamental principles of due process. (*Pate v. Robinson* (1966), 383 U.S. 375, 378, 15 L. Ed. 2d 815, 818, 86 S. Ct. 836, 838). A summary disposition in a restoration hearing does not comport with the procedural requirements of either the constitution or the statute. (*Coppersmith* 67, 71.) In the case at bar there was no hearing. The defendant's conviction must be reversed. In light of this determination, we need not address defendant's other contentions.

For the foregoing reasons the trial court's order denying defendant's motion to vacate her plea of guilty is reversed and the cause is remanded for a hearing to determine whether defendant is presently fit to stand trial.

Reversed and remanded.

STAMOS and HARTMAN, JJ., concur.