THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID STRIBLING, Defendant-Appellant.

First District (1st Division)    No. 80-919

Opinion filed March 8, 1982.

Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Michele A. Grimaldi, and Michael J. Kelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Following a jury trial, David Stribling was convicted of murder. He was sentenced to a term of imprisonment of not less than 250 years and not more than 500 years. Defendant now appeals his conviction.

On appeal, defendant argues that the trial court erred: (1) in failing to order a fitness hearing; (2) in denying his motion to suppress his post-arrest statement as the fruit of an unlawful arrest; and (3) in failing to comply with the requirements of Supreme Court Rule 401 regarding waiver of counsel.

We reverse and remand for a new trial.

On June 8, 1974, Jack Fuerst was found dead in the service garage of his car dealership at 8159 S. Stoney Island in Chicago. In December of

1975, David Stribling (defendant) was first implicated in the Fuerst murder by an informant. On January 20, 1976, in an unrelated criminal proceeding, defendant was found unfit to stand trial and was committed to the Department of Mental Health. In February of 1977, defendant was found fit to stand trial. He was tried and convicted of the unrelated criminal matter. He served a sentence in the Illinois State Penitentiary and was paroled on December 15, 1977. Defendant was arrested by Chicago police officers on April 20, 1978, as he left a courtroom in which he had appeared on another unrelated matter. He was charged by indictment with murder and armed robbery. Following a jury trial, defendant was found guilty of murder and sentenced to serve a minimum of 250 years to a maximum of 500 years imprisonment in the Illinois Department of Corrections. Other pertinent facts will be mentioned in the opinion which follows.

■■ ■ Defendant argues that the trial court erred in failing to hold a hearing on his fitness to stand trial. In Illinois, a defendant is considered fit to stand trial if he possesses two abilities. A defendant must be able to understand the nature and purpose of the proceedings against him and to assist in his defense. (See Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(a)(1), (2).) The critical inquiry is whether the facts present a *bona fide* doubt as to whether a defendant possessed these two abilities. (*People v. Murphy* (1978), 72 Ill. 2d 421, 431, 381 N.E.2d 677.) The question of a defendant's fitness may be raised by the State, the defendant himself, or the trial court. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1(b).) Even if neither the defendant nor the State raises the issue, it is incumbent upon the trial court to order a fitness hearing once facts are brought to its attention which raise a *bona fide* doubt of a defendant's fitness. See 72 Ill. 2d 421, 430.

In the present case, neither defendant nor the State requested a fitness hearing. Two different trial judges were apprised of the fact that defendant previously had been found unfit to stand trial, but neither ordered a fitness hearing. On May 15, 1979, defendant moved to dismiss the charges against him on the ground that there was a 42-month delay between the Fuerst murder and the date when he was indicted. An oral stipulation of facts was presented to the court for the purpose of establishing defendant's whereabouts between the date of the offense and the time of his arrest. It was stipulated that on January 20, 1976, in an unrelated criminal proceeding, defendant was found unfit and committed to the Department of Mental Health. It was further stipulated that approximately one year later he was found fit. He was tried and convicted on the unrelated matter. He served his sentence in the Illinois State Penitentiary and was paroled on December 15, 1977. On April 20, 1978, he was arrested and charged with the Fuerst murder.

On July 15, 1979, in a hearing before another judge on defendant's motion to quash the arrest, the fact that defendant previously had been found unfit was again mentioned. The police officer who had arrested defendant for the Fuerst murder testified that police investigators were aware that defendant had been in a mental institution as a result of having been found unfit to stand trial on an unrelated charge. Defendant corroborated the officer's testimony and further stated that he had been restored in front of a judge.

■■ Generally, evidence of a prior adjudication of unfitness raises a presumption that the condition of unfitness remains. (*People v. Williams* (1980), 92 Ill. App. 3d 608, 612, 415 N.E.2d 1192.) This presumption continues until there has been a valid hearing adjudicating him fit. (92 Ill. App. 3d 608, 612.) Although the record in the instant case contains no documentation verifying defendant's restoration, the fact that it was stipulated that he had been judicially restored effectively negates any presumption of unfitness. Defendant cannot on appeal complain of evidence which he has stipulated into the record. (*People v. Hawkins* (1963), 27 Ill. 2d 339, 341, 189 N.E.2d 252.) Nevertheless, we believe that the fact that defendant previously had been adjudicated unfit to stand trial is one factor which must be considered in deciding whether a fitness hearing should have been ordered in the trial court.

The record contains other evidence which brings into question whether defendant actually was able to understand the nature and purpose of the proceedings against him and to assist in his defense. When his case was called for trial on July 31, 1979, defendant demanded that his court-appointed attorney be dismissed. He accused the attorney of entering into a conspiracy with the prosecution and police. Defendant persisted in demanding that his trial attorney be dismissed. The trial judge warned defendant that his complaints and obstinate behavior in the jury's presence could prejudice his cause. In response to the judge's admonishment, defendant said, "I don't understand what your honor is saying." Eventually, the trial judge was convinced that defendant's attitude toward his court-appointed attorney required that the representation be terminated and defendant proceeded *pro se*. Defendant's comments during trial and his *pro se* appellate brief indicate that he was obsessed with the notion that he had been conspired against and that he was irrationally suspicious of everyone involved in the trial court proceeding.

To support his allegation of the existence of a conspiracy, defendant tendered to the trial court a list of 83 witnesses he wanted to subpoena. In opening argument, defendant stated that he intended to prove that the Fuerst murder never happened. He presented no evidence whatsoever in support of either his conspiracy allegation or his defense theory.

The State argues that defendant's cross-examination of witnesses, his own testimony and his objections during trial demonstrate his "cunning ability" to understand the nature of the proceedings and to cooperate with his counsel. It is evident from the record that defendant is relatively familiar with legal terminology and courtroom procedure. Defendant's familiarity with legal jargon and procedure, however, does not necessarily indicate that he was able to understand the nature of the proceedings against him or to assist in his defense. In our opinion, defendant's cross-examination of State's witnesses, his constant interjection of inappropriate objections "for the record," and his rambling closing argument demonstrate an inadequate ability to assist in his own defense.

■■ As the United States Supreme Court stated in *Drope v. Missouri*, "[t]here are * * * no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." (*Drope v. Missouri* (1975), 420 U.S. 162, 180, 43 L. Ed. 2d 103, 118, 95 S. Ct. 896, 898.) In our judgment, the fact that defendant previously had been diagnosed as unfit to stand trial, coupled with his conduct at trial, raised a *bona fide* doubt of his fitness to stand trial. We, therefore, reverse and remand for a fitness hearing and a new trial.

Defendant also contends that the trial court erred in denying his motion to suppress his confession. He argues that his confession was the fruit of an arrest that was not based on probable cause. We find no merit in this contention. Additionally, he claims that the trial court erred in forcing him to trial without counsel in that it failed to comply with the requirements of Supreme Court Rule 401 regarding waiver of counsel. We need not address this issue in light of our reversal on the fitness issue.

Judgment reversed; cause remanded for a new trial.

CAMPBELL, P. J., and O'CONNOR, J., concur.