Nos. 2--03--0213 & 
2--03--0214 cons.

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE

OF ILLINOIS,

Plaintiff-Appellee,

v.

PHILLIP A. MEYERS
,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit

Court
 of Kane County.

Nos. 
01--CF--1104

        02--CC--5

Honorable

James T. Doyle
,

Judge, Presiding.

______________________________________________________________________________

JUSTICE GROMETER delivered the opinion of the court:

Defendant, Phillip A. Meyers, was convicted of aggravated battery (720 ILCS 5/12--4(b)(4) (West 2000)) following a jury trial in the circuit court of Kane County.  Defendant was also held in contempt of court as the result of an outburst directed at the trial judge during proceedings after the verdict was announced.  Defendant now appeals.  He argues that the trial court erred in not holding a fitness hearing and that the contempt citation should be reversed.  In addition, he complains of two trial errors.  We agree with defendant's first two contentions, and we will address his claims of error during the trial only briefly.  We reverse both defendant's conviction and contempt citation, and we remand this matter for further proceedings.

BACKGROUND

On April 18, 2001, defendant was arrested for an incident that resulted in two charges, aggravated battery (720 ILCS 5/12--4(b)(4) (West 2000)) and resisting a peace officer (720 ILCS 5/31--1 (West 2000)).  Daniel Woods, an Aurora police officer, testified that he observed defendant standing in the middle of a road with cars driving around him.  Defendant was gesticulating to passing vehicles with a raised middle finger and yelling at the occupants of the vehicles.  Woods and his partner pulled up in their car and told defendant to get off of the road.  Defendant stated that he was from Chicago and knew what the deal was.  Defendant walked toward the side of the street and threw some paper to the ground as he passed the officers' car.  The officers pulled over to the roadside and instructed defendant to come over to the car.  Woods told defendant he was under arrest.  Woods attempted to grab defendant's arm, but defendant pulled away.  A struggle ensued, and, in its course, Woods' partner, Mark Knepp, was struck.  With some discrepancies, Knepp testified to a similar version of events.

Defendant's testimony, on the other hand, was markedly different.  He stated that he was at a convenience store when he noticed two police officers watching him.  After he left the store, he attempted to cross the street.  The officers pulled out of a parking lot and cut defendant off.  One of the officers rolled down a window and asked what defendant was doing walking around like he was tough.  Defendant tried to walk around the car, but the officers maneuvered it to block his path.  Eventually, he made it to the sidewalk.  One of the officers then exited the squad car, ran to defendant, grabbed him by the neck, and slammed him to the ground.  The other officer then came over, and the two beat defendant for several minutes.  Two other squads arrived and took defendant into custody.  The jury apparently accepted the officers' version of events.

Defendant was initially represented by Greg Brown, an assistant public defender.  During a bond reduction hearing, defendant acknowledged that he had two other charges pending against him, criminal damage to government property and aggravated fleeing and eluding a police officer.  As to the fleeing and eluding charge, defendant explained that police officers from Du Page County and Naperville, with the assistance of the Aurora police, had beaten him and threatened him with death.  During the course of the hearing, defendant added that the police had robbed his apartment.  He stated that, since the police had been beating him, "I guess that means that you will kill me here, I guess."

On June 26, 2001, attorney Brown requested a fitness evaluation.  The trial judge, Keith Brown, who did not preside over defendant's trial, ordered one.  During a hearing on July 19, 2001, defendant stated that he would not undergo a psychological evaluation and that he wanted his attorney fired.  Judge Brown ordered defendant to cooperate with the examination.  On August 24, 2001, a report was filed stating that defendant was fit to stand trial.

On September 5, 2001, a hearing was held on defendant's 
pro se
 speedy-trial motion.  During the hearing, attorney Brown requested a finding regarding fitness.  Judge Doyle, who ultimately presided over defendant's trial, asked defendant if he was fit and defendant responded affirmatively.  Judge Doyle then found defendant fit based on defendant's statement and the report that had previously been filed.

On February 4, 2002, during a pretrial hearing, attorney Brown apprised the trial court of a potential conflict between him and defendant based on defendant's statements that he intended to sue Brown.  Brown stated that he was not raising the fitness issue again.  Judge Doyle stated that he was uncomfortable with the way the case was proceeding and acknowledged that Brown was in a difficult spot.  Judge Doyle stated that if Brown was asking leave to withdraw, he was granting the request.  Brown stated that he was not sure whether he was asking to withdraw.  The court then took a recess so that the situation could be resolved.

After the recess, attorney Regina Harris appeared before the court.  The court described her as "the expert in the Public Defender's Office on fitness issues, mental health issues."  Regarding defendant, Harris stated that she did not believe there was an "active psychotic process."  However, she noted that a "great deal of agitation" existed and that it was "[p]ossibly mania."  She added that defendant "[s]eems convinced that his attorney is not working for him, perhaps is even working against him."  The trial judge then stated that, in his experience, "it also seems like it's a paranoia."  The court noted that defendant was currently laughing hysterically at the counsel table.  The court stated that defendant's conduct and Harris's opinion sufficiently raised the issue of fitness.

The judge then took the case off the jury trial call and questioned whether there was a doctor available who could examine defendant immediately.  Defendant pointed at the judge and said, "I don't know what you think you're doing.  I'm never going to speak to a psychiatrist.  Do you understand what I'm saying?  I already did.  You keep bullshitting around.  You a [
sic
] bitch.  Punk."

A recess was then taken, and Dr. Timothy Brown evaluated defendant.  Upon resuming, the court stated, "And Dr. Tim, we'd [
sic
] appreciate that you could get over here as quickly and rapidly as you did and in terms of my belief at this time during his conduct all morning that it was raising an issue in my mind of a bona fide issue on fitness."  The court added, "Fortunately, we had an expert like yourself that got over here quickly."  Dr. Brown then testified, and the following ensued:

"THE COURT: Have you had a chance to interview him? And the defendant is in the courtroom.  If you could report to the Court, please, on the issue for fitness for trial today.

DR. BROWN: It is my opinion that Mr. Meyer [
sic
] is not fit to stand trial.  He is unable to control his behavior in the courtroom and he is unable to cooperate and assist in the preparation of his defense as a result of a mental illness.

THE DEFENDANT: I ain't even talked to this guy.  You mother fuckers are stupid, man.

DR. BROWN: That would be an example of it.

THE COURT: What else would you like to say, sir?

THE DEFENDANT: Well, I got warrants, man, in Du Page County where you all refused to take me to court. *** And if you all think you're going on with the trial, you need to give me an I bond so I can get out of here and because I don't need to be fucked with.  You [
sic
] stupid.  You know you're stupid, man.  You're the stupidest one of all.

THE COURT: Let the record also reflect that the colloquy that just started --

THE DEFENDANT: I ain't even talked to that guy.

 THE COURT: -- started with a burst of laughter that was not --

THE DEFENDANT: First call you [
sic
] momma.

THE COURT: What else would you like to say?

THE DEFENDANT: What else you got [
sic
] to say?

THE COURT: I'm going to based on the testimony at this time 
find that you are not
 
fit for trial
 and I'm going to order a continued examination and continue this ***.

THE DEFENDANT: I'm never going to talk to him.  So that means you're never going to go to mother fucking trial.  Dick head Doyle."  (Emphasis added.)

After continuing in this manner for a while, the court asked defendant, "Are you done now?"  Defendant replied, "You going [
sic
] to be done."  The judge then ordered defendant removed from the courtroom, and defendant called him a bitch.

Following defendant's removal, the court made the following statement:

"THE COURT: Let the record reflect that he did flash me the universal signal of discontent with me [
sic
] with the middle finger.  So the Appellate Court can fully appreciate the conduct of the morning.  
Okay.

Clearly, clearly, I think for the Appellate Court that we've established the problem with the fitness for trial so that we don't get reversed.  So we don't get reversed as I did previously for ordering a fitness issue for the conduct in the morning.

Now, I think Tim's right.  He's in custody of the Department of Corrections, although I know he's up for parole.  We've now found him unfit based on his testimony."

Later, the court asked Dr. Brown to file a report.  Dr. Brown stated that he would write a letter reflecting his opinion.  The court then reiterated, "I'm going to make a finding based on your evaluation and his conduct here that he is not fit for trial."

On February 8, 2002, attorney Brown filed a motion for a new fitness hearing.  In the motion, Brown explained that, due to the animosity directed at him by defendant, he was unable to discuss the fitness issue with defendant sufficiently and did not explain to defendant that he had a statutory right to a jury determination regarding the issue (725 ILCS 5/104--12 (West 2002)).  The motion requested that the court "enter an order vacating the fitness hearing held on February 4, 2002 and to schedule a hearing within the appropriate time frame."  The trial court granted the motion without comment.  Brown also informed the court that he was requesting his supervisor to transfer the case to a different attorney.

On March 7, 2002, Thomas O. McCullough appeared on defendant's behalf.  McCullough informed the court that he had been assigned the case the day before.  He stated that he spoke with defendant, and defendant wished to have a trial as soon as possible.  The court and parties then discussed the scheduling of a jury trial.  The trial court inquired, "And that's the jury trial on the fitness issue?"  The following discussion then occurred:

"MR. MC CULLOUGH: No.  No, Judge, and let me speak to that because [the State's Attorney] alerted me.  Based on my conversation with Mr. Meyers, I have no question at this point based on my conversation about his fitness.  Clearly understands the judge and jury distinction, clearly understands the nature of the charges.  He's cooperative with me, at least so far back in the lock up.  He understands the process.

THE COURT: I don't have a problem.

MR. MC CULLOUGH: I guess all I'm saying let's not go there and he said he'll behave and we're going to set a trial and we're in business
.

THE COURT: Then lets [
sic
] do it on March 25."

A jury trial was held on March 25, 2002.  The next day, the jury returned a verdict of guilty on the aggravated battery count, the State having dismissed the count of resisting a peace officer.  Defendant requested to be returned to prison rather than remain in county jail pending sentencing.  The court did not respond to his request.  Defendant then said something unintelligible and the court asked him what he had said.  The following exchange then occurred:

 "THE DEFENDANT: You heard what the fucking [
sic
] I said, man.

THE COURT: All right.  Here's what I'm going to do.  I've been real patient with you the last time.

THE DEFENDANT: I've been patient with you mother fuckers, too.  Fuck this, man.

THE COURT: You know what?  So right now --

THE DEFENDANT: Right now, kiss my ass, man.

THE COURT: Okay, I'm hol
ding you in direct contempt of court[.]

THE DEFENDANT: Hold your momma.

THE COURT: You know what?  I'm going to hold you in contempt of court right now and I'm sentencing you to six months right now for your conduct right now.

THE DEFENDANT: I don't give a fuck about what you [
sic
] going to do, bitch.  What the fuck.  Hey, man, don't pull on me.  What you do [
sic
], don't pull on me.  I'm telling you, man.  Don't push on me.  Get your damn hands off of me, man."

On April 17, 2002, after denying defendant's motion for a new trial, the court addressed a letter it had received from Dr. Brown.  The letter is dated February 5, 2002, but it was not file-stamped until April 17.  The letter contains a number of Dr. Brown's findings and observations as to defendant's fitness to stand trial, including: (1) that defendant's judgment was grossly impaired; (2) that defendant was irrational; (3) that defendant did not appreciate that the court "had the ability to take control of him, restrict his freedom, and 
try him on criminal charges"; (4) that defendant was "angrily out of control" while in court; (5) that defendant is "suffering from a psychotic disorder in which his mood fluctuates rapidly"; (6) that defendant is "suspicious, distrustful, aggressive, and most likely delusional"; (7) that defendant "lacks the capacity to cooperate with his attorney"; (8) that defendant "does not appreciate the nature and purpose of the proceeding against him"; and (9) that, to a reasonable degree of psychiatric certainty, defendant is not fit to stand trial.

In addressing Dr. Brown's report, the trial judge first noted that defendant argued for his fitness and also stated that "I tend to agree with [defendant] over our psychiatrist or our psychologist."  The judge then noted that defendant, including during his testimony before the jury, was "a gentleman at all times" and "knew exactly what he was doing."  The judge stated that it appeared that defendant assisted in his defense and appreciated the nature of the proceedings.  The judge later found Dr. Brown's report incredible, relying in part on defendant's assertion that Dr. Brown could not offer an opinion because defendant refused to be examined.

McCullough then interjected, "At this point, I would like to have a copy of [the report] so I can look at this.  I need to explain, *** the only thing that I was aware of when I got into this case was that there's been trouble between Mr. Meyers and prior Public Defenders, I didn't know the nature and extent of the problems."  McCullough explained that when he first met with defendant, defendant stated he wanted to go to trial.  McCullough stated that defendant did cooperate with him and added, "I think we have understood the process."

The trial court then, apparently, determined that defendant had been fit during the trial, although it made no explicit finding on the subject.  This appeal followed.

ANALYSIS

Relying on both state statutory law and the federal constitution, defendant contends that a 
bona fide
 doubt existed as to his fitness prior to trial and that it was error to proceed to trial without a fitness hearing.  He also argues, relying primarily on his mental illness, that the court erred in finding him in direct criminal contempt.  We will address the fitness issue first.

Trying a defendant who is not fit to stand trial violates both the law of this state as embodied in the Code of Criminal Procedure of 1963 (see 725 ILCS 5/104--10 
et seq
. (West 2002)) and the due process clause of the United States Constitution (U.S. Const., amend XIV; see 
People v. Hill
, 345 Ill. App. 3d 620, 625 (2003)).  Thus, where a 
bona fide
 doubt exists as to a defendant's fitness, the court is required to order a fitness hearing and resolve the issue before proceeding any further.  
People v. Johnson
, 206 Ill. 2d 348, 361 (2002).  Once a 
bona fide
 doubt exists, the State must prove the defendant fit by a preponderance of the evidence before a trial may take place.  
Johnson
, 206 Ill. 2d at 361.  A defendant is considered fit to stand trial if he or she understands the nature of the proceedings and can assist in the defense.  
Johnson
, 206 Ill. 2d at 361-62.  If there has been a judicial finding that a defendant is unfit, the finding can be reversed only through a subsequent judicial determination that the defendant is fit.  
People v. Williams
, 92 Ill. App. 3d 608, 614 (1980).

Initially, we note that the trial court actually found defendant unfit on February 4, 2002, stating, "I'm going to based on the testimony at this time find that you are not fit for trial and I'm going to order a continued examination and continue this ***" and later reiterating, "We've now found him unfit based on his testimony."  This finding followed testimony by Dr. Brown and Regina Harris as well as the court's observation of defendant's behavior.  Subsequently, the trial court never found defendant fit.  Neither in the discussions between the court and McCullough prior to trial that followed McCullough's representation that he did not have a "question" about defendant's fitness nor after trial, when McCullough and the trial judge discussed Dr. Brown's report, did the trial court expressly find defendant fit.  We recognize that in discussing Dr. Brown's report with McCullough, the trial judge did state that defendant comported himself appropriately during trial, appeared to understand the proceedings, and seemed to help in his defense.  However, these discussions between McCullough and the trial court cannot substitute for a hearing on the issue of fitness, particularly where, as here, defendant requested that a jury determine the issue.  
Williams
, 92 Ill. App. 3d at 614 
("
A summary disposition in a 
restoration hearing
 does not comport with the procedural requirements of either the constitution or the statute"
).

The State argues that the trial court vacated its finding of unfitness when defendant sought a jury determination of the issue.  The trial court did grant defendant's motion entitled "Motion for a New Fitness Hearing."  In it, defendant's first attorney explained that due to the animosity directed at him by defendant, he was unable to explain that defendant had a right to a jury trial on the issue of fitness.  Accordingly, the motion requests that the court "enter an order vacating the fitness hearing held on February 4, 2002 and to schedule a hearing within the appropriate time frame."

Assuming, 
arguendo
, that one can simply vacate a finding of unfitness without holding a restoration hearing, we nonetheless hold that this cause must be remanded.  While the State's argument, if we were to accept it, would dispose of the finding of unfitness, it does nothing to controvert the proposition that a 
bona fide
 doubt as to defendant's fitness existed.

If a 
bona fide
 doubt exists, a trial court must hold a fitness hearing before continuing with the proceedings.  
Johnson
, 206 Ill. 2d at 361.  Regardless of whether the finding of unfitness was vacated, the fact that the trial court actually found defendant unfit at one point provides a strong indication that defendant was, in fact, unfit.  In 
In re T.D.W.
, 109 Ill. App. 3d 852, 855 (1982)
, the Fourth District observed, "
In the instant case the trial court ordered a fitness hearing and 
ipso facto
 determined the existence of such a doubt."  It recently retreated from that position and overruled 
T.D.W.
, reasoning that a court cannot create the right to a fitness hearing simply by ordering one.  
People v. Gentry
, No. 4--02--0890 (August 24, 2004)
.  We agree with this proposition of law; however, we still consider the reasoning of 
T.D.W.
 valid in a factual sense.  Here, as the trial court heard testimony and observed defendant, the fact that the court actually found defendant unfit cannot be ignored.

The State attempts to escape this conclusion by citing McCullough's statement that he saw no indication of unfitness and his request, on defendant's behalf, for a speedy trial, which the trial judge granted.  The State argues that these can be viewed in one of two ways: either as a waiver of the right to the fitness hearing or as the trial judge reconsidering his earlier finding that a 
bona fide
 doubt existed.  We find neither persuasive.

Regarding waiver, we first note that the very notion of an unfit defendant waiving his right not to be tried while unfit is a dubious one.  See 
Pate v. Robinson
, 383 U.S. 375, 384, 15 L. Ed. 2d 815, 821, 86 S. Ct. 836, 841 (1966) ("But it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial").  
Moreover
, considerations of waiver aside, a trial court has an independent duty to ascertain whether a defendant is fit.  
People v. Goodman
, 347 Ill. App. 3d 278, 287 (2004).
  If we were to interpret the trial court's actions as a reconsideration of its previous ruling, we would find the decision to be an abuse of discretion and contrary to the manifest weight of the evidence.  Prior to trial, Dr. Brown and Regina Harris observed defendant and testified that he was not fit to be tried.  Additionally, as the trial court observed, defendant's behavior provided strong evidence of his unfitness.  The trial judge also opined that defendant was suffering from paranoia.  Against this evidence, there is only McCullough's statement that he had no questions about defendant's fitness.  However, during the hearing in which he made this statement, McCullough acknowledged that he had been assigned to the case only on the preceding day.  As such, McCullough's opinion as to defendant's fitness is not well grounded.  Notably, he had not observed defendant interact with the court at this point.

We find equally unpersuasive the State's contention that defendant's behavior in court prior to trial was caused by a conflict with his first attorney.  Immediately after trial, while represented by McCullough, defendant engaged in the same sort of conduct that he had engaged in prior to trial and was held in contempt as a result.  Moreover, we find such speculation wholly insufficient to refute the testimony and opinions of Dr. Brown, Harris, and the trial judge himself regarding the cause of defendant's repeated outbursts.

In sum, while we are not unmindful of the difficulties the trial court faced and the extreme efforts it made to be fair to the rights of all, we conclude that defendant was entitled to a fitness hearing.  We therefore must reverse defendant's conviction and remand this cause so that one can be held.  If, and when, it is determined that defendant is fit to stand trial, defendant may be retried, as the evidence presented at trial was sufficient to preclude double jeopardy from attaching.  
People v. Denny
, 221 Ill. App. 3d 298, 303 (1991).

Defendant also challenges his conviction of direct criminal contempt.  Defendant contends that the contempt citation should be reversed outright because, due to his mental illness, he could not form the mental state necessary for a finding of contempt.  Defendant argues that contempt requires a finding of willfulness (
People v. Willson
, 302 Ill. App. 3d 1004, 1005 (1999)), and he points to Dr. Brown's testimony that defendant was unable to control his behavior while in court.  While this testimony certainly supports defendant's position, we cannot say that it is so compelling that defendant, as a matter of law, could not be guilty of contempt.

Defendant also argues that he should have been allowed to present a defense to the contempt citation, and we agree.  A court may summarily punish criminal contempt only if all relevant facts are before the court and within the judge's personal knowledge.  
People v. Simac
, 161 Ill. 2d 297, 306 (1994).  Where it appears that a substantial issue as to a defendant's mental capacity exists, it cannot be said that all of the relevant facts are before the court.  
Willson
, 302 Ill. App. 3d at 1006.  In the instant case, the record is replete with facts and opinions of experts that indicate that such a substantial issue may exist.  Accordingly, defendant should have been allowed to present a defense of mental incapacity to the charge of contempt.

Before concluding, we note that defendant also complains of two trial errors.  We will address them briefly.  The first, that the trial court erred in not providing a full definition of "knowingly" in response to a query by the jury, is not likely to recur on retrial.  Defense counsel failed to interpose an appropriate objection and tender what it deemed an appropriate instruction, thus waiving the issue.  See 
People v. Kittinger
, 261 Ill. App. 3d 1033, 1038 (1994).  Should the issue arise, defense counsel should now be on notice as to how to proceed, and the trial court may consider the issue in the context of the case as it develops.  Regarding the second contention, that the trial court erred in allowing defendant to be impeached with a conviction of fleeing and eluding a police officer, we find no error.  Defendant claims that the earlier conviction is too similar to the instant one and thus resulted in unfair prejudice.  See 
People v Montgomery
, 47 Ill. 2d 510 (1971).  The State counters that fleeing an officer is very different from striking one.  The State's observation is not unreasonable.  Thus, a reasonable person could agree with the trial court, and we cannot say that the trial court abused its discretion in allowing this evidence to be used to impeach defendant.  
People v. Flowers
, 306 Ill. App. 3d 259, 264 (1999).

CONCLUSION

In light of the foregoing, we reverse defendant's conviction of aggravated battery, vacate the finding of contempt, and remand this cause.  On remand, the trial court should hold a hearing to determine if defendant is fit before proceeding further and also afford defendant an opportunity to present a defense to the contempt citation.

Reversed in part and vacated in part; cause remanded with directions.

McLAREN and HUTCHINSON, JJ., concur.