THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THADEUS C. DAVIS, Defendant-Appellant.

(No. 73-391;

Fifth District—February 19, 1975.

Robert Farrell, of Mt. Vernon, and James Streicker, of Chicago, both of State Appellate Defender's Office, for appellant.

William J. Scott, Attorney General, of Springfield, and Walter E. Moehle, State's Attorney, of Nashville (James B. Zagel and Roger L. Longtin, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

On September 25, 1973, appellant Davis pled guilty before the Washington County Circuit Court to aggravated kidnapping and armed robbery as charged in one indictment, to the same two offenses as charged in a second indictment, and to kidnapping as charged in a third indictment. He was sentenced to not less than 6½ nor more than 19½ years on each charge of aggravated kidnapping, not less than 6½ nor more than 19½ years on each charge of armed robbery, and not less than 3 nor more than 9 years for kidnapping, the sentences to run concurrently.

Appellant raises three issues for review:

1. Whether the trial court erred in accepting the appellant's guilty pleas when the appellant previously had been found unfit to stand trial and no subsequent judicial determination was ever made that appellant had become fit to stand trial prior to entering such pleas.

2. Whether the trial court failed to comply with Supreme Court Rule 402(a)(1) (Ill. Rev. Stat., ch. 110A, par. 402(a)(1)) by

failing to address appellant in open court to inform him of and to determine if he understood the nature of the charges brought against him prior to accepting the appellant's pleas of guilty.

3. Whether the convictions for armed robbery must be vacated on the ground that appellant's convictions for aggravated kidnapping and armed robbery arose from the same conduct.

In view of our holding with regard to the first issue, we need not consider the second and third issues presented by the appellant.

On May 1, 1973, appellant appeared with counsel for arraignment. Prior to and subsequent to the arraignment, but before September 25, 1973, when the appellant entered his pleas of guilty, he was examined by two psychiatrists, one chosen by the appellant's counsel and one chosen by the State's attorney. The psychiatrist examining the appellant at the appellant's attorney's request recommended that the appellant be committed to a mental institution for a period of observation in order to prevent a serious miscarriage of justice. The psychiatrist examining the appellant at the State's Attorney's request found the appellant to be mentally fit to stand trial. As a result of such conflicting reports by the psychiatrists, the trial court on May 21, 1973, conducted a competency hearing pursuant to sections 5—2—1 and 5—2—2 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch, 38, pars. 1005—2—1, 1005—2—2). The two psychiatrists' reports were admitted as evidence, and the trail court found the appellant unfit to stand trial. It is instructive to note the trial court's specific order in this regard:

"* * * That defendant is in fact presently unfit to stand trial. Defendant is remanded to Illinois Security Hospital at Menard, Illinois.

It is further ordered that hearing be conducted in accordance with and within the time period provided in the Mental Health Code of 1967 and that upon discharge the said defendant be returned to the custody of the Sheriff of Washington County, Illinois, for further proceedings."

On arrival at the Illinois Security Hospital, the appellant was examined by a staff psychiatrist who found the appellant not to be in need of hospitalization or treatment and "fit to stand trial." His report of May 23, 1973, states the following conclusion:

"*IMPRESSIONS AND RECOMMENDATIONS:*

It is my professional judgment that this person is not in need of hospitalization or treatment. He understands the nature of the charge and he can cooperate with counsel. This person is fit to stand trial."

He recommended that the appellant "be returned to the Washington County authorities as soon as possible to stand trial on his charges."

The record before us shows that appellant was not "returned" to the Washington County Circuit Court from the Illinois Security Hospital. Instead, it appears that he was "released" to the U. S. Marshal, East St. Louis, Illinois, with regard to Federal charges unrelated to this case. At this point, the record before us becomes somewhat clouded.

A civil commitment hearing was conducted on June 6, 1973, before the Randolph County Circuit Court with regard to appellant Davis, pursuant to a petition for hospitalization filed by the assistant superintendent of the Illinois Security Hospital. At such hearing it appears that the staff psychiatrist's report of May 23, 1973, was introduced in evidence. Two other psychiatrists reported to the Randolph County Circuit Court that they had personally examined the appellant and "found him not in need of mental treatment." They further recommended that the appellant not be hospitalized, but be "returned to court for trial * * * [as] * * * provided by the statute." On June 6, 1973, on the basis of the three psychiatric reports, the Randolph County Circuit Court found that appellant was not in need of mental treatment and further found that "the patient is legally competent."

On September 25, 1973, the defendant again appeared before the Washington County Circuit Court and entered his pleas of guilty to the charges upon which the convictions were based. The record indicates that at no time did the trial court make reference to its earlier determination on May 21, 1973, that the appellant was unfit to stand trial, nor was there any hearing before the Washington County Circuit Court between May 21, 1973, and September 25, 1973, to determine whether the appellant had become fit to stand trial since May 21, 1973. In other words, while the appellant's unfitness to stand trial had been judicially determined by the trial court on May 21, 1973, the same trial court did not judicially determine that the appellant was fit to stand trial on September 25, 1973, or to enter his pleas of guilty on that date.

The problems in this case focus upon sections 5—2—1(a) and 5—2—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, pars. 1005—2—1(a), 1005—2—1(c)). Section 5—2—1(a) states specifically:

"* * * [a] defendant is unfit to stand trial or be sentenced if, because of a mental or physical condition, he is unable:

(1) to understand the nature and purpose of the proceedings against him; or

(2) to assist in his defense."

Section 5—2—1(c) states:

"When a bona fide doubt of the defendant's fitness to stand

trial or be sentenced is raised, the court shall order that a determination of that question be made before further proceedings." It is clear in this case that the trial court below, after arraignment, believed that there was a bona fide doubt of the appellant's fitness to stand trial or be sentenced, and accordingly did order a fitness hearing on May 21, 1973. Indeed, the trial court below found that the defendant was on May 21, 1973, unfit to stand trial.

Once a court finds a defendant unfit to stand trial or be sentenced, certain specific procedures come into immediate effect. Section 5—2—2 (a) (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2(a)) states:

"If the defendant is found unfit to stand trial or be sentenced, the court shall remand the defendant to a hospital, as defined by the Mental Health Code of 1967, and shall order that a hearing be conducted in accordance with the procedures, and within the time periods, specified in such Act. The disposition of defendant pursuant to such hearing, and the admission, detention, care, treatment and discharge of any such defendant found to be in need of mental treatment, shall be determined in accordance with such Act. If the defendant is not ordered hospitalized in such hearing, the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance, under such conditions as the court finds appropriate, which may include, but need not be limited to requiring the defendant to submit to or to secure treatment for his mental condition."

We note at the outset that section 5—2—2(a) is the only provision covering a situation in which (1) a defendant is judicially found to be unfit to stand trial or be sentenced, (2) the trial court making the determination of unfitness has remanded the defendant to a hospital and a civil commitment hearing is ordered pursuant to the Mental Health Code of 1967, and (3) at such civil commitment hearing, it is determined that the defendant is not in need of mental treatment and is not ordered to be hospitalized. The express language of section 5—2—2(a) states merely that the consequence of such a situation or sequence of events is simply that the Department of Mental Health shall petition the trial court to release the defendant on bail or recognizance under conditions as the court finds appropriate, and such conditions may include requiring the defendant to submit to or secure treatment for his mental condition. The implication of the express language of section 5—2—2(a) is, of course, that under such circumstances or sequence, the defendant will be brought to trial; otherwise the Department of Mental Health would not be required to petition the trial court to release the defendant on bail or recognizance.

The appellant argues, in essence, that since he was judicially determined to be unfit to stand trial or be sentenced on May 21, 1973, he could not stand trial or be sentenced (enter his plea) on September 25, 1973, because he had never been judicially determined to be fit to stand trial or be sentenced after May 23, 1973. We agree.

■■ A fundamental principle of our law is that a defendant in a criminal case must be fit to stand trial or be sentenced; otherwise, he shall not stand trial or be sentenced. Illinois law has expressed this principle by statute since 1827:

> "A person that becomes lunatic or insane after the commission of a crime or misdemeanor, ought not to be tried for the offence during the continuance of the lunacy or insanity. If after verdict of guilty and before judgment pronounced, such person become lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. And if after judgment, and before the execution of the sentence, such person become lunatic or insane, then in case the punishment be capital, the execution thereof shall be stayed until the recovery of said person from the insanity or lunacy. In all these cases, it shall be the duty of the court to empannel a jury to try the question whether the accused be, at the time of such empannelling, insane or lunatic." (Revised Code of Laws of Illinois 1827, Criminal Code § 12, at 125-26.)

The evolution of our law has caused a change in terminology. The 1827 statute quoted above employed the words "lunacy" and "insanity" in describing the mental condition of a defendant which would prohibit the defendant from standing trial, being sentenced, or even being executed. Over the years, the word "lunacy" grew unfashionable, and the word "insanity" took on a complex medical as well as legal connotation. By 1963, the words "lunacy" and "insanity" were replaced with the word "incompetency" to describe that condition of a defendant, mental or physical, which, if judicially determined, would prohibit the defendant from standing trial or being sentenced. (Ill. Rev. Stat. 1963, ch. 38, par. 104—2.) The word "incompetency" was believed to be a better word than "insanity" for expressing the condition, mental or physical, which caused the defendant to be unable to understand the nature and purpose of the proceedings against him or to be able to assist in his defense. Moreover, the word "incompetency" was substituted in the 1963 statute to avoid confusion with "insanity," a term more readily associated and applied to the time an offense was committed.

By 1973, however, the legislature again made a substitution, and in sections 5—2—1 and 5—2—2 of the Unified Code of Corrections (Ill.

Rev. Stat. 1973, ch. 38, pars. 1005—2—1 and 1005—2—2) substituted the word "fitness" for the earlier word "competence." According to the Council Commentary to section 5—2—1, the change in terminology from "competence" to "fitness" to stand trial was based upon a concern "to avoid confusion as prompted the earlier change from 'insanity' to 'competence of stand trial.'" Moreover, the Council Commentary states:

> "Fitness speaks only to a person's ability to function within the context of a trial, whereas the term 'competence' is a mental health term dealing with whether an individual should be committed to an institution or not, and excludes consideration of physical fitness." Ill. Ann. Stat. ch. 38, § 1005—2—1, Council Commentary, at 220 (Smith-Hurd 1973).

Regardless of whether the terminology is "lunacy," "insanity," "incompetency," or "unfitness," the fact remains that if the trial court determines that the defendant, because of a mental or physical condition, is unable to (1) understand the nature and purpose of the proceedings against him, or (2) assist in his defense, the defendant cannot stand trial or be sentenced. These conditions, once judicially determined, are not undetermined by the passage of approximately 4 months (May 23, 1973, to September 25, 1973), nor can such a judicial determination be overruled by a psychiatrist's report or finding in a civil commitment hearing that the defendant does not need mental treatment or hospitalization.

In *People v. Johnson*, 15 Ill.App.3d 680, 304 N.E.2d 688, the court considered the question of whether a defendant, judicially determined to be an incompetent under section 104—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1971, ch. 38, par. 104—1) could 5 months later "waive" a jury trial. The court held that he could not. In the *Johnson* case, the court cited *People v. Santoro*, 13 Ill.App.3d 426, 301 N.E.2d 175, for the proposition that the question of "competency to stand trial" is a jurisdictional issue and cannot be waived.

The transcript of the sentencing proceeding of September 25, 1973, reveals that the trial court did not hold a new hearing to determine whether the appellant was fit to stand trial or be sentenced prior to accepting his pleas of guilty and sentencing him on that date. It is not clear from the record whether the trial court on September 25, 1973, had considered the Illinois Security Hospital psychiatrist's report finding the appellant "fit for trial," or whether the trial court considered the order of the Circuit Court of Randolph County in the civil commitment hearing with regard to finding that the appellant did not need mental treatment or hospitalization and was "competent." The purpose of the civil commitment hearing under the Mental Health Code of 1967 is not

to determine whether the respondent is fit to stand trial or be sentenced, but to determine whether he requires mental treatment or hospitalization. Indeed, under section 5—2—2(b), a defendant found unfit to stand trial or be sentenced, and who does not require hospitalization, during the period of his unfitness, be released on bail or recognizance:

"(b) * * * If the court finds that defendant continues to be unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. * * *" Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—2(b).

Once there is a judicial determination that a defendant in a criminal case is unfit to stand trial or be sentenced, such determination cannot be reversed without another judicial determination that the defendant is fit to stand trial or be sentenced. It is the trial court or a jury (in the event the question of fitness is raised prior to the commencement of the trial) that makes this determination after a hearing:

"(d) When the question of the defendant's fitness to stand trial is raised prior to the commencement of trial, the question shall be determined by the court, or by a jury. The defendant or the State may request a jury or the judge may on his own motion order a jury. When the question is raised after commencement of the trial, the question shall be determined by the court." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(d).)

Obviously, there is a presumption that the defendant is fit to stand trial or be sentenced unless the question is raised by the defendant himself, by the State, or by the court. However, we note that once the question is raised, the court or jury, as the case may be, can make a determination either that the defendant is fit or unfit to stand trial or be sentenced. It should be emphasized also that such a determination is made after a hearing which is subject to the rules of evidence, and the burden of proof of unfitness rests upon the defendant, if the defendant has raised the question, and upon the State if the State or court has raised the question. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(e) through (j).) It would be absurd to impose formal evidentiary and procedural requirements and safeguards upon the initial judicial determination that a defendant is or is not fit to stand trial or be sentenced, and then (assuming the defendant has been found to be unfit at such a formal proceeding) permit an informal determination that the defendant has been "restored" to fitness to stand trial or be sentenced. Section 5—2—2(b) contemplates a new hearing on the question of the defendant's restoration to fitness:

"(b) * * * If the court finds that defendant continues to be

unfit to stand trial or be sentenced but that he no longer requires hospitalization, the defendant shall be released under paragraph (a) of this Section on bail or recognizance. *Either the State or the defendant may at any time petition the court for review of the defendant's fitness.*" (Emphasis added.)

Under the Council Commentary it is stated:

"Subparagraph b [section 5—2—2(b)] provides for a review of the issue of continued commitment in open court at stated intervals, with the power in the State's Attorney or defendant to petition at other times. This expands and clarifies former law which required a review only 'when reasonable grounds exist to believe that an incompetent is now competent.'" (Ill. Ann. Stat. ch. 38, § 1005—2—2, Council Commentary, at 258 (Smith-Hurd 1973).)

Section 5—2—2(b) and the Council Commentary thereon certainly imply that the court may entertain a petition to determine whether the defendant, having been judicially determined by the court previously to be unfit, has now been restored to fitness to stand trial or be sentenced.

■■ We note that the appellant also assigned error on the ground that the trial court failed to comply with Supreme Court Rule 402(a)(1) (Ill. Rev. Stat., ch. 110A, par. 402(a)(1)) in accepting his pleas of guilty without first addressing him personally in open court and informing him of and determining that he understands the nature of the charges brought against him. As set forth above, in view of our determination that it was a fundamental error to accept the appellant's guilty pleas when the appellant had been found unfit to stand trial and no subsequent determination was ever made that the appellant had become fit to stand trial prior to his entering such pleas, we believe there is no necessity to make a ruling on the question of substantial compliance with Supreme Court Rule 402(a)(1). However, we note in passing how very relevant Supreme Court Rule 402(a)(1) becomes in a situation like the instant case. Under section 5—2—1, unfitness to stand trial or be sentenced, whether occasioned by a mental or physical condition, is defined as the defendant being unable to understand the nature and the purpose of the proceedings against him or to assist in his defense. Supreme Court Rule 402(a)(1) mandates that the trial court determine (in a case where defendant's fitness to stand trial or be sentenced has not been raised) that the defendant understands the nature of the charges against him. In this case there could be no substantial compliance with Rule 402(a)(1) in any event, regardless of the admonishments to the appellant with regard to the nature of the charge, unless and until the trial court judi-

1016

cially determined that the appellant, having previously been judicially determined to be unfit to stand trial or be sentenced, had subsequently been restored to fitness to stand trial or be sentenced.

For the foregoing reasons, the judgment of the trial court is reversed, and this cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

EBERSPACHER and CARTER, JJ., concur.