THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS GREENE, Defendant-Appellant.

First District (3rd Division)    No. 79-1696

Opinion filed December 16, 1981.

Steven N. Levin, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Adrienne Noble Nacev, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WHITE delivered the opinion of the court:

Defendant, Thomas Greene, was charged by indictment with rape, indecent liberties with a child, burglary, aggravated battery and attempted murder. Following a bench trial defendant was found guilty of rape and aggravated battery (Ill. Rev. Stat. 1973, ch. 38, pars. 11—1 and 12—4), and received concurrent sentences of 25 to 35 years and 3 to 9 years respectively. In view of our disposition of the case, we find it necessary to address only the first issue raised by defendant on appeal, namely, whether defendant, having been previously adjudged unfit to stand trial, received a fitness hearing that was statutorily and constitutionally sufficient to base a valid finding of fitness before being tried on these serious charges. Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—1 et seq.

The indictment against Greene alleged in essence that he, on October 6, 1975, after entering a dwelling, beat and raped a 14-year-old girl. Greene's attorney filed a petition for psychiatric examination and a pretrial hearing to determine his client's fitness to stand trial. Defendant was examined on December 30, 1975, by Dr. Reifman of the Psychiatric Institute of the circuit court of Cook County, who found Greene unable to cooperate with counsel in his own defense and unfit to stand trial because of schizophrenia, paranoid type. On January 20, 1976, in a hearing in the criminal division of the circuit court of Cook County, defendant was found unfit to stand trial. Shortly thereafter, in a civil proceeding under the Mental Health Act, he was found in need of mental treatment and committed to the Department of Mental Health.

Eleven months later defendant was again examined by Dr. Reifman

who, in a letter dated December 22, 1976, to the presiding judge of the criminal division, reported that the "previously adjudicated, not-mentally-fit-for-trial defendant, is now mentally fit to stand trial. He understands the nature of the charge and the purpose of the proceedings, and is able to cooperate with counsel in his own defense." Dr. Mary Joan McCabe, an independent psychiatrist appointed by the court to examine Greene, also filed a report that defendant was ready to stand trial. Greene's counsel moved for a hearing on his fitness which the court set for May 27, 1977. On that date there was no formal introduction of evidence. The assistant State's attorney read into the record the December 22, 1976, letter of Dr. Reifman. Greene's counsel agreed on the record with the prosecutor that the report of Dr. McCabe had been filed and that it also stated that Greene was fit to stand trial. Then, this colloquy followed:

"MR. ROBBINS [prosecutor]: Your Honor, on behalf of the people of the State of Illinois, we *would be willing to stipulate to the findings of the two psychiatrists as contained in the reports and stipulate to the fact that the defendant is fit for trial.*

MR. LANGE [defense counsel]: Will you also stipulate to the qualifications of Dr. McCabe?

MR. ROBBINS: Yes. We will stipulate that they are duly certified and qualified psychiatrists and that they have examined the defendant and we would stipulate to their findings that the defendant is fit to stand trial.

MR. LANGE: We will stipulate to same matter, your Honor.

THE COURT: Very well, fine. Where do we go from here, gentlemen?" (Emphasis added.)

This was the sum total of the proceedings at the hearing held to determine whether defendant previously adjudged unfit was now fit to stand trial. There was no draft order following this truncated hearing. A minute order reads, "Stipulated testimony heard. Order of Court. Finding defendant fit to stand trial. Judgment is entered on the finding." On August 17, 1977, defendant filed a "Motion to Vacate the Agreed Findings of Competency." No disposition of this motion appears in the record. In due course, the case came on for trial and, contrary to repeated advisement of his counsel given in open court, defendant waived trial by jury, and was tried as set forth above.

On appeal, defendant contends that it was error for the court to place him on trial without a judicial determination of his fitness to stand trial. We agree. Defendant's prior adjudication of unfitness raises the presumption that the condition of unfitness remains. (*People v. Williams* (1980), 92 Ill. App. 3d 608, 612, 415 N.E.2d 1192; *People v. Lang* (1975), 26 Ill. App. 3d 648, 653, 325 N.E.2d 305; *People v. Santoro* (1973), 13 Ill. App. 3d 426, 301 N.E.2d 175 (abstract).) This presumption continues until there has

been a valid subsequent hearing adjudicating him fit. *People v. Williams* (1980), 92 Ill. App. 3d 608, 612; *People v. Johnson* (1973), 15 Ill. App. 3d 680, 685, 687, 304 N.E.2d 688; *People v. McKinstray* (1964), 30 Ill. 2d 611, 617, 198 N.E.2d 829.

■■ ■ The defendant contends that the May 27, 1977, pretrial hearing accorded him was not a valid or sufficient fitness hearing. While it is true that a trial court's fitness determination must be given great weight on review (*People v. Davis* (1978), 65 Ill. App. 3d 580, 589, 382 N.E.2d 594), the issue of fitness to stand trial is one of constitutional dimension, and the trial record must affirmatively show the exercise of judicial discretion and judgment insofar as a finding of fitness is concerned. (*People v. Santoro* (1973), 13 Ill. App. 3d 426, 301 N.E.2d 174 (abstract).) The procedural requirements of a hearing "restoring" a defendant to fitness are no less stringent than those required in an initial competency hearing. (Ill. Rev. Stat. 1977, ch. 91½, pars. 10—7, 9—4; *People v. Coppersmith* (1977), 47 Ill. App. 3d 67, 70, 71, 361 N.E.2d 773.) "It would be absurd to impose formal evidentiary and procedural requirements and safeguards upon the initial judicial determination that a defendant is or is not fit to stand trial or be sentenced and then (assuming the defendant has been found to be unfit at such a formal proceeding) permit an informal determination that the defendant has been 'restored' to fitness to stand trial or be sentenced." *People v. Davis* (1975), 25 Ill. App. 3d 1007, 1014, 324 N.E.2d 58.

The procedures employed at Greene's restoration hearing fall far short of what the law requires. At this hearing no testimony was given. Instead, two written reports of doctors who had examined Greene were produced. Following stipulations by counsel to the existence of these reports, the trial court made a finding that Greene was now fit to stand trial.

*People v. Johnson*, cited above, involved facts which are strikingly similar to those in the case at bar. In *Johnson*, the appellate court reversed a conviction and addressed the specific question of whether counsel for a legally incompetent person can stipulate on behalf of said person as to the crucial expert testimony on competency to stand trial. There, defendant was adjudicated unfit to stand trial following his indictment for armed robbery and remanded to the Department of Mental Health. At his restoration hearing defendant's attorney and assistant State's attorney stipulated to a psychiatric report by Dr. Reifman which concluded that defendant was fit to stand trial. This court found that defendant Johnson had not been afforded a valid restoration hearing. The court stated: "[T]o accept defendant's opinion, and that of his counsel by stipulation, that he was able to cooperate with counsel in his defense, when the purpose of a competency hearing in defendant's behalf was to determine that very

fact, would be to make a sham out of the restoration hearing." 15 Ill. App. 3d 680, 686.

Similarly, the court in *People v. Davis* (1975), 25 Ill. App. 3d 1007, 1013, 324 N.E.2d 58, observed that once there was a judicial determination that defendant was unfit to stand trial, that determination could be overruled solely by the court's acknowledgement of psychiatric opinions that indicated otherwise.

■■ It does not appear that a true court hearing was conducted in connection with the restoration of Greene. The trial court's decision rested solely upon stipulations to unsworn psychiatric testimony. Under these circumstances, it is difficult to conceive that the trial judge exercised any discretion in determining Greene fit for trial. Indeed, the evidence produced was so minimal that the trial court had little before it upon which to exercise its discretion.

A judicial determination of fitness cannot be based upon mere stipulation to the existence of psychiatric conclusions. *People v. Santoro* (1973), 13 Ill. App. 3d 426 (abstract); *People v. Davis* (1975), 25 Ill. App. 3d 1007, 324 N.E.2d 58.) Rather, the cases require "an adversarial hearing and have disapproved of verdicts of fitness based solely upon unsupported stipulations, agreements pleas made by the accused or his counsel." (*People v. Williams* (1980), 92 Ill. App. 3d 608, 612.) Since we find no affirmative showing in the record below that the trial court exercised discretion in finding Greene fit to stand trial, there was in effect no fitness hearing at all, and we are compelled to reverse.

For the aforementioned reasons, the cause is reversed and remanded for a new hearing.

Reversed and remanded.

McNAMARA and McGILLICUDDY, JJ., concur.