THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JESSIE J. McKINLEY, Defendant-Appellant.

First District (4th Division)   No. 81—1006

Opinion filed June 30, 1983.

Steven Clark, of State Appellate Defender's Office, of Chicago (James R. Vogler and Douglass G. Hewitt, both of Winston & Strawn, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Paula Carstensen, and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE ROMITI delivered the opinion of the court:

Defendant Jessie McKinley, convicted of murder in a jury trial, contends on appeal that: (1) the summary restoration of his fitness to stand trial, based on stipulated psychiatric conclusions, was improper; and (2) the prosecution used its peremptory challenges to exclude blacks from the jury in a manner which violated defendant's right to an impartial jury.

We reverse and remand.

On November 16, 1978, defendant was charged with two counts of murder and two counts of armed violence in connection with the shooting death of Jeffrey Benas. At the request of defense counsel, Judge Barbaro on November 22, 1978, ordered the Psychiatric Institute of the circuit court of Cook County to examine defendant as to his fitness to stand trial and his sanity at the time of the offense.

Defendant was examined on December 27, 1978, by Dr. Gilbert Bogen, a staff psychiatrist at the Institute. In a letter to the court Bogen reported that based upon his examination the defendant was not mentally fit to stand trial because of an inability to cooperate with counsel in his own defense. On the trial court's order defendant was then examined by the Illinois Mental Health Institute from January 17, 1979, to January 31, 1979. In a letter to Judge Barbaro dated January 31, 1979 Dr. Edith D. Hartman, a staff psychiatrist, informed the court that based on extensive physical, psychological and psychiatric evaluation of the defendant it had been determined that he was unfit for trial. Dr. Hartman further reported:

"The psychological test finds [defendant] in the borderline defective range (full scale IQ 70.) This young man is very sick and in dire need of treatment. His mental illness renders him dangerous to others. *** In summary, the diagnosis is Schizophrenia, Chronic Undifferentiated type, unfit for trial and fulfilling criteria for involuntary hospitalization."

In a fitness hearing conducted February 1, 1979, based upon these opinions as stipulated into the record, defendant was found unfit to stand trial and in need of mental treatment. He was remanded to the Department of Mental Health and was committed to the Chester Mental Health Clinic for treatment.

In a letter dated May 31, 1979, Dr. Bogen informed the court that he had that day examined the defendant and had concluded that defendant was mentally fit for trial. Other than stating that defendant understood the nature of the charges and the purpose of the proceedings and was able to cooperate with counsel, the letter contained

no further details concerning the examination conducted by Bogen or the basis for his conclusions. On September 10, 1979, the restoration hearing at issue was held. At that hearing defense counsel waived a jury on behalf of the defendant. It was then stipulated between the parties that:

"*** Dr. Bogen being a member of the Psychiatric Institute of the Circuit Court of Cook County, would testify that on May 31, 1979, he had occasion to examine the defendant before the Court, Jessie McKinley, and at that time making observations and after interviewing Mr. Jessie McKinley came to the opinion, and so stated it is his opinion that the defendant is mentally fit to stand trial and that he understands the nature of the charges pending against him, the purpose of the proceedings, and that he is able to cooperate with counsel in his own defense."

The prosecution and the defense rested and the court found the defendant fit to stand trial. The record does not affirmatively indicate that the defendant was present at the hearing.

Defendant's trial did not commence until March 10, 1981. He did not testify at that trial.

I

■ Citing *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219, defendant contends that the trial court cannot be said to have exercised its discretion in finding defendant fit to stand trial based merely on a conclusionary stipulation. In *Greene* a defendant who had been found unfit 11 months earlier was examined by the same doctor and found fit for trial. A second doctor examined the defendant and also found him fit. At a subsequent fitness hearing the trial court found the defendant fit to stand trial based solely on the stipulated findings of the two doctors. On appeal the *Greene* court noted that defendant's prior adjudication of unfitness raised the presumption that his condition of unfitness remained until a valid subsequent hearing resulted in an adjudication of fitness. (*People v. McKinstray* (1964), 30 Ill. 2d 611, 198 N.E.2d 829; *People v. Williams* (1980), 92 Ill. App. 3d 608, 415 N.E.2d 1192.) The court held that this subsequent determination of fitness could not be based upon mere stipulation to the existence of psychiatric conclusions because "the issue of fitness to stand trial is one of constitutional dimension, and the trial record must affirmatively show the exercise of judicial discretion and judgment insofar as a finding of fitness is concerned." (*People v. Greene* (1981), 102 Ill. App. 3d 639, 642, 430 N.E.2d 219, 221.) The

*Greene* case has recently been followed in *People v. Lewis* (1983), 112 Ill. App. 3d 626, where the court again found that a restoration hearing based solely on stipulated psychiatric testimony was invalid. The *Lewis* court also held that the defendant, who was presumptively unfit as the result of a prior adjudication of unfitness, was in no position to authorize such a stipulation nor was his counsel justified in doing so for him.

■ We find this cause to be controlled by those prior cases. The defendant was found to again be fit based solely on stipulated psychiatric conclusions. The stipulation did not even include any information as to the underlying foundation for the conclusions. The trial judge cannot be said to have properly exercised his discretion in finding the defendant fit based on such a skeletal hearing. Accordingly we reverse defendant's conviction and remand the cause for a new hearing.

## II

Defendant has also contended on appeal that the prosecution improperly used its peremptory challenges to exclude all but one black from the jury. However in failing to secure a transcript of the *voir dire* defendant has precluded this court from reviewing that claim. (*People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369; *People v. Bracey* (1981), 93 Ill. App. 3d 864, 417 N.E.2d 1029.) Moreover defendant's reliance on *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046 (Illinois appeal pending, No. 56907), is of no avail in the light of our supreme court's rejection of the holding of that case in *People v. Williams* (1983), 97 Ill. 2d 252.

Defendant's conviction is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.