THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CORNELL GORE, Defendant-Appellant.

Third District   No. 82—775

Opinion filed June 21, 1983.—Rehearing denied August 31, 1983.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

Following a bench trial in the circuit court of Peoria County, the defendant, Cornell Gore, was found guilty but mentally ill of the offense of attempted indecent liberties with a child. (Ill. Rev. Stat. 1981, ch. 38, par. 8—4(a).) The defendant was sentenced to a term of four years of probation with the condition that he serve three months in the county jail. He was also ordered to submit to treatment at the

Zeller Mental Health Center under a court-approved treatment program. The defendant was ordered to undergo whatever psychiatric treatment the probation department directed.

The facts are briefly summarized on appeal.

On October 19, 1981, the defendant went to the home of Nellie McCall in the Taft Homes, Peoria, Illinois. While there, he removed all his clothing with the intent to engage in sexual intercourse with McCall's six-year-old daughter, Sequana McCall. His attempt to carry out this activity was thwarted by Nellie and Michael Fortune. Subsequently, the defendant, still naked, left the scene.

Officer Raymond Frazelle of the Peoria police department received a dispatch on October 19, 1981, that a man was running nude in the Taft Homes area. As he was patrolling, Frazelle received a second dispatch that the man had been given some clothing. The man was described as wearing a blue shirt, orange pants, and had no shoes. The man was walking south on Adams Street.

The officer observed a man matching the description and walking south on Adams Street. He drove alongside the man, left his car and asked the man to come over to him. The man, identified as the defendant, walked over to Officer Frazelle at which time Frazelle asked the defendant, "What happened back there?" referring to the Taft Homes. The defendant responded, "I was messing with a six year old girl." Frazelle then placed the defendant under arrest, examined him for weapons, and handcuffed the defendant. The officer read the defendant his *Miranda* rights. The defendant said that he understood. Officer Crowell transported the defendant to the police station.

While he was in a holding cell at the Peoria police station, the defendant appeared to experience visual and auditory hallucinations for a short period of time. However, when this episode was over, he agreed to be interviewed by Officer Martha Minton. The defendant was advised of his *Miranda* rights for the second time. Debbie Price and Michael Korvanda, counselors with the Peoria Human Services Center, were present during the interview.

The defendant admitted that he tried to engage in sexual intercourse with Sequana McCall but claimed he received permission from Nellie McCall in "double talk." He told Minton that although he realized that what he did was not right and was a serious crime, he felt it was alright because he had permission from Nellie. The defendant mentioned "voodoo" and talked about his brother being involved in the incident.

Pursuant to the State's motion to have the defendant declared unfit to stand trial, the defendant was examined by Dr. Mortimer Beck.

The parties stipulated to Dr. Beck's qualifications and his report, which found the defendant unfit to stand trial. The trial court declared the defendant unfit on October 26, 1981, and committed him to Zeller Mental Health Center.

On November 30, 1981, Dr. SoHee Lee of the Zeller Mental Health Center sent the court a letter regarding the defendant's condition. The doctor found that the defendant recovered from a short-time psychotic episode and that the defendant was fit to stand trial. The parties stipulated to this report on January 22, 1982, during a hearing on the fitness issue. Following the hearing, the trial court found the defendant fit to stand trial beyond a reasonable doubt.

The defendant's motion to suppress the statements he made to Officers Frazelle and Minton was denied following a hearing. The court found that the defendant had waived his rights. The cause proceeded to a bench trial and the defendant was found guilty but mentally ill.

In the defendant's first issue on appeal, he claims that the trial court erred when it denied his motion to suppress his statements to the police. He argues that the statement to Officer Frazelle, "I was messing with a six year old girl," was made pursuant to custodial interrogation which was not preceded by *Miranda* warnings. Therefore, the statement should have been suppressed.

■ Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) A court must look to the circumstances surrounding the questioning and then objectively evaluate whether a reasonable, innocent person would have believed he was in custody. (*People v. Savory* (1982), 105 Ill. App. 3d 1023, 435 N.E.2d 226.) Traditional investigatory functions of the police, such as general on-the-scene questioning in the fact-finding process, have often been held admissible under *Miranda* although *Miranda* warnings were not given beforehand. *People v. Thompson* (1971), 48 Ill. 2d 41, 268 N.E.2d 369.

The defendant in the instant case was not in custody at the time he made his initial statement to Officer Frazelle. Although the defendant relies on the statement made by the assistant State's Attorney during the suppression hearing that "it would appear that the defendant was in custody," we do not find that statement controlling. We also note that the trial court's primary focus in denying the defendant's motion to suppress was whether the defendant voluntarily and intelligently waived his constitutional rights.

At the time the defendant made his first statement to Officer Frazelle, he was on a public street during daylight hours. Officer Frazelle saw that the defendant matched the description given on the dispatch. The officer, dressed in a police uniform and driving a marked squad car, drove alongside the defendant, got out of his car, and asked the defendant to come over to him. The defendant complied. At that point, Officer Frazelle had no knowledge of what occurred earlier at the Taft Homes. He was not aware that a crime had been committed. Frazelle inquired of the defendant, "What happened back there?" referring to the Taft Homes. The defendant replied, "I was messing with a six year old girl." Officer Crowell was also present during this statement but he did not testify. Questions which relate directly to a suspected crime after the officer's suspicion has been aroused may be permissible as on-the-scene inquiries. *People v. Bradford* (1981), 97 Ill. App. 3d 998, 423 N.E.2d 1179.

■ There was no restraint of the defendant prior to his statement. No weapons were drawn. He was not under arrest. The defendant was not in custody when the officer asked an investigatory, noncoercive question meant to clarify a suspicious situation. (*People v. Thompson* (1971), 48 Ill. 2d 41, 268 N.E.2d 369.) Under these circumstances, *Miranda* warnings were not required. Once the defendant made his statement, the situation changed from an investigatory one since now the officer was aware that a crime probable had been committed. At that point the defendant was placed under arrest, searched, restrained and apprised of his *Miranda* rights.

The second issue raised by the defendant is composed of two allegations of error in regards to the trial court's failure to suppress the defendant's second statement to Officer Martha Minton at the jail. First, he claims that this later statement was tainted by the constitutional violation which occurred with his statement to Officer Frazelle. Having determined that no constitutional violation occurred with the first statement, the second statement was not tainted.

■ Second, the defendant claims that he did not knowingly and intelligently waive his rights prior to making his second statement. To determine whether a defendant understood and knowingly waived his constitutional rights, the totality of the circumstances surrounding the confession must be considered. (*People v. Avery* (1980), 88 Ill. App. 3d 771, 410 N.E.2d 1093.) In reviewing the totality of the circumstances, a preponderance of the evidence must demonstrate that the defendant understood and knowingly waived his rights. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *People v. Avery* (1980), 88 Ill. App. 3d 771, 410 N.E.2d 1093.) Absent an abuse

of discretion, the trial court's finding on waiver will not be reversed unless it is contrary to the manifest weight of the evidence. *People v. Noe* (1980), 86 Ill. App. 3d 762, 408 N.E.2d 483.

■ The defendant asserts that because of his mental condition and low average range of intelligence he could not knowingly and intelligently waive his rights. The determination of whether the defendant knowingly and intelligently waived his rights depends on the facts and circumstances of the case and includes the background, experience and conduct of the defendant. A subnormal mentality does not *ipso facto* make a confession involuntary where the subnormality has not deprived the defendant of the capacity to understand the meaning and effect of his confession. *People v. Henderson* (1980), 83 Ill. App. 3d 854, 863, 404 N.E.2d 392, 399.

The totality of the circumstances indicate that the defendant in the case at bar knowingly and intelligently waived his rights. His mental condition was episodic. He waived his rights at a time when he was not hallucinating but had calmed down and relaxed. The defendant was observed throughout the interview by Debbie Price, who had a master's degree in psychology, and Michael Korvanda, who had a master's degree in clinical psychology. Both counselors, and Officer Minton, said the defendant was not hallucinating during the interview.

Officer Minton read the defendant his *Miranda* rights "fairly slowly," and he responded that he understood them. The defendant admitted that he knew that what he did was not right. He understood he could go to trial and possibly be sent to prison for what he had done. The defendant responded to Officer Minton's questions. He was able to detail the commission of his acts earlier that day.

The defendant's mental capacity was in the low average range of intelligence with a full scale IQ of 86. His low average mentality did not interfere with his ability to comprehend the meaning of the *Miranda* warnings.

■ Based on the totality of the circumstances, the defendant made a knowing and intelligent waiver of his rights. The trial court did not abuse its discretion in denying the defendant's motion to suppress the defendant's statements.

Another issue raised by the defendant concerns his fitness to stand trial. He claims that he was found fit without a full adversarial hearing on the matter.

■ It is a violation of due process if a person is tried while he is incompetent. (*Page v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836.) A defendant is unfit if, because of his mental or

physical condition, he is unable to understand the nature and the purpose of the proceedings against him or to assist in his defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10.) Once a defendant has been found unfit to stand trial, he must be restored to fitness before the trial can commence. (Ill. Rev. Stat. 1981, ch. 38, pars. 104—10 *et seq.*) The defendant is entitled to a fitness hearing when a *bona fide* doubt exists as to his fitness. *People v. Teague* (1980), 83 Ill. App. 3d 990, 404 N.E.2d 1054.

The defendant in the instant case had a hearing on the issue of fitness. However, he complains that the hearing was not adequate to protect his rights because the parties stipulated to the report of the doctor that stated he was fit to stand trial.

The submission of the report in lieu of testimony was stipulated to by the defense counsel. He did not object. No showing of prejudice against the defendant has been made. (*People v. Shadowens* (1969), 44 Ill. 2d 70, 254 N.E.2d 484.) The defendant does not dispute the report.

■ The defendant was provided with a fitness hearing. He was represented by counsel. The fact that there was a stipulation to the report did not deny the defendant a full adversarial hearing, although we are aware of decisions to the contrary. (*People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219; *People v. Williams* (1980), 92 Ill. App. 3d 608, 415 N.E.2d 1192.) The defendant was properly restored to fitness before trial.

In the defendant's last issue, he asserts that the trial court erroneously found him guilty but mentally ill. He bases this assertion on what he claims was the State's failure to rebut his insanity defense beyond a reasonable doubt.

The trial court's finding that the defendant was legally sane at the time of the offense is not so improbable or unsatisfactory as to create a reasonable doubt of the defendant's sanity. (*People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255.) The record supports the court's finding. Although the defendant points to the opinion of Dr. Beck that he believed "there is a valid insanity defense," the trial court was not required as a matter of law to accept the statement. (*In re T.D.W.* (1982), 109 Ill. App. 3d 852, 441 N.E.2d 155.) The statement by Dr. Beck was made in a letter to the assistant State's Attorney over five months after the doctor examined the defendant for competency to stand trial. The doctor indicated that he would want to examine the defendant if he were to testify on the issue.

In view of the evidence, the defendant was properly found to be mentally ill but not insane at the time of the offense.

Based on the foregoing reasoning, the judgment of the circuit court of Peoria County is affirmed.

Affirmed.

SCOTT and HEIPLE, JJ., concur.