THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNEY LEE ORR, Defendant-Appellant.

Fifth District No. 5—82—0236

Opinion filed September 28, 1984.

Randy E. Blue and Patricia McMeen, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Terry M. Green, State's Attorney, of Benton (Stephen E. Norris and Karen L. Stallman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

The defendant, Johnney Lee Orr, pleaded guilty but mentally ill to the offense of attempted murder. The only issue on appeal is whether the trial court failed to follow statutory procedures in accepting the defendant's plea. See Ill. Rev. Stat. 1981, ch. 38, pars. 113—4(d), 115—2(b).

The defendant was indicted on September 19, 1980, for the attempted murder of his ex-wife on August 11, 1980. He subsequently entered a plea of not guilty and was released on bond.

On November 21, 1980, upon motion by the defendant, the court ordered a psychiatric examination to determine the defendant's sanity at the time of the alleged offense. It was later discovered, however, that the defendant had been examined regarding his competency to stand trial, and the court ordered a second examination, which was conducted on March 28, 1981.

On January 15, 1982, a hearing was held in which the defendant withdrew his previous plea of not guilty and entered a plea of guilty but mentally ill to the offense of attempted murder. The defendant was admonished pursuant to Rule 402 (87 Ill. 2d R. 402), and the State presented a summary of the evidence against the defendant.

The State then submitted psychiatric reports prepared by Dr. Clarence Boyd based upon his examinations of the defendant. In his

first report, Dr. Boyd related a history of mental problems of the defendant dating back to 1972, when he received psychiatric counseling while in the Marine Corps. In 1974 the defendant was hospitalized in Anna State Hospital, where he was diagnosed as having a paranoid personality disorder and was given individual psychotherapy. The defendant told Dr. Boyd that in May 1980 he tried to kill himself by driving his car into a bridge abutment at 60 miles per hour. He stated that he did this in order to get his wife to feel sorry for him. The defendant and his wife were divorced in July 1980, and, at the time the divorce papers were signed, the defendant took an overdose of pills that resulted in his being hospitalized overnight. Dr. Boyd's report further indicated that approximately two weeks before the offense involving his ex-wife on August 11, 1980, the defendant made two trips to a family counseling service in West Frankfort. The purpose of these visits, according to the defendant, was "[s]o I could try to get away from my wife. *** I wanted to be hypnotized so I would forget her."

The defendant told Dr. Boyd that on the evening before the attack against his ex-wife, he drank a great deal of whiskey, went home, took six or seven 750-milligram Placidyl capsules and drank more whiskey. He then carved a suicide note on the wall with a hunting knife and cut his wrist "a little." The next thing the defendant remembered was being at his ex-wife's house the following day. He "was holding a knife and Debbie [his ex-wife] had blood all over her." The defendant's ex-wife had been stabbed several times in her abdomen, back and side.

From his first examination of the defendant, Dr. Boyd concluded that the defendant had "a personality disorder of mixed type with paranoid, histrionic, antisocial, borderline and passive-aggressive features." Dr. Boyd further stated that the defendant was competent to stand trial but that "his mental competency at the time of the reported criminality is not known to this examiner." In his report of the second examination of the defendant, conducted after discovery of the initial confusion as to the purpose of the exam, Dr. Boyd considered the defendant's claim that he had consumed substantial amounts of alcohol and had taken six or seven 750-milligram Placidyl capsules on the evening before the attempted murder of his ex-wife. The report concluded:

> "If one assumes that the patient ingested and retained all that he claims to have taken it would most likely resulted [sic] in the patient's going into a deep prolonged state of sleep. Paradoxical reactions consisting of restlessness or excitement can

occur with Placidyl or alcohol. Mild stimulation, marked excitement and states of hysteria have been reported. It could not be stated beyond a reasonable degree of medical certainty that at the time of the alleged criminal stabbing he was able to appreciate the criminality of his conduct if the above statement are [*sic*] true, but that possibility exists."

After submitting these reports, the State's Attorney added that the defendant had exhibited noticeable signs of emotional strain during previous court hearings. Considering these factors, the State asserted that there was sufficient evidence that the defendant suffered from mental problems that could be classified as mental illness, but that the defendant's illness was not sufficiently severe to relieve him of responsibility for his conduct. The court then asked the defendant's attorney if he had anything to add regarding either the factual basis or the psychiatric reports. The defendant's attorney responded in the negative, adding that "[w]e agree in substance virtually with most of what the State's Attorney has said."

In further discussion, the defendant's attorney reiterated that the defendant had been despondent and depressed on the evening before the offense and had consumed a great deal of alcohol, as well as the Placidyl capsules. The defendant's attorney also stated that he had become quite familiar with the new statute providing for a plea of guilty but mentally ill and that he had recommended that the defendant make this plea because he felt it was in the defendant's best interests to do so. The court then explained to the defendant that a verdict of guilty but mentally ill would require the Department of Corrections to inquire as to the defendant's need for psychiatric treatment and provide treatment if needed. After questioning the defendant to make sure he understood the nature of the charge against him and that he was giving up his right to assert an intoxication defense, the court accepted the defendant's plea of guilty but mentally ill as requested by the defendant. The court made no mention of Dr. Boyd's reports nor did it make any findings as to the defendant's mental state on August 11, 1980.

At his sentencing hearing on February 24, 1982, the defendant was sentenced to a term of 15 years' imprisonment with the Department of Corrections. On February 25, 1982, the defendant filed a motion to withdraw his plea of guilty but mentally ill, which was denied following a hearing on the motion.

On appeal from this denial the defendant contends that the trial court erred in accepting the defendant's plea of guilty but mentally ill in that it failed to hold a proper hearing on the issue of the defend-

ant's mental health and failed to make findings as to the defendant's mental state at the time of the offense. The defendant asserts that the court thus failed to comply with statutory procedures for accepting such a plea and that he should, therefore, be allowed to withdraw his plea of guilty but mentally ill.

Section 113—4(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 113—4(d)) provides:

> "If [a] defendant pleads guilty but mentally ill, the court shall not accept such a plea until the defendant has undergone examination by a clinical psychologist or psychiatrist and the judge has examined the psychiatric or psychological report or reports, held a hearing on the issue of the defendant's mental condition and is satisfied that there is a factual basis that the defendant was mentally ill at the time of the offense to which the plea is entered."

Similarly, under section 115—2(b) of the Code (Ill. Rev. Stat. 1981, ch. 38, par. 115—2(b)), a plea of guilty but mentally ill may be accepted by the court when:

> "(1) the defendant has undergone an examination by a clinical psychologist or psychiatrist ***; and
>
> (2) the judge has examined the psychiatric or psychological report or reports; and
>
> (3) the judge has held a hearing, at which either party may present evidence, on the issue of the defendant's mental health and, at the conclusion of such hearing, is satisfied that there is factual basis that the defendant was mentally ill at the time of the offense to which the plea is entered."

"Mental illness" or "mentally ill" is defined for purposes of the statute as

> "a substantial disorder of thought, mood, or behavior which afflicted a person at the time of the commission of the offense and which impaired that person's judgment, but not to the extent that he is unable to appreciate the wrongfulness of his behavior or is unable to conform his conduct to the requirements of law." Ill. Rev. Stat. 1981, ch. 38, par. 6—2(d).

As a preliminary matter, we note that we are aware of no Illinois case that has addressed the issue of the sufficiency of compliance with the procedures for accepting a guilty but mentally ill plea. We may, however, look to other jurisdictions that have enacted comparable guilty but mentally ill statutes (*cf., e.g.,* Mich. Comp. Laws sec. 768.36(2) (1975)) for persuasive, though not controlling, authority in construing the instant statute. 14 Ill. L. & Prac. *Courts* sec. 84

(1968).

 While the defendant here contends initially that no proper hearing was held to determine the defendant's mental state at the time of the offense, we believe the procedure followed by the court was sufficient to come within the mandates of the statute. In setting forth the factual basis for the plea, the State submitted the psychiatric reports prepared by Dr. Boyd, and the defendant agreed with the facts contained therein regarding the defendant's mental condition. The defendant was given the opportunity to present additional evidence as to his mental health but, through his attorney, declined to do so. By agreeing with the psychiatric evidence presented by the State, the defendant thus stipulated to that evidence and to the submission of psychiatric reports in lieu of testimony. The use of such stipulations is proper at hearings generally (*People v. Parrott* (1982), 108 Ill. App. 3d 222, 438 N.E.2d 1313; *People v. Hodges* (1976), 36 Ill. App. 3d 422, 343 N.E.2d 565), and we find no basis upon which to preclude their use in the context of the present proceeding. *Cf. People v. Booth* (1982), 414 Mich. 343, 324 N.W.2d 741 (under comparable Michigan statute setting forth procedures for accepting guilty but mentally ill pleas, parties stipulated to trial court's use of psychiatric reports in lieu of hearing on issue of mental illness).

The defendant, arguing by analogy to the requirements for a hearing to determine a defendant's fitness to stand trial, asserts that a finding of mental illness cannot be based upon stipulations to unsworn psychiatric testimony. (See *People v. Greene* (1981), 102 Ill. App. 3d 639, 430 N.E.2d 219; *People v. Williams* (1980), 92 Ill. App. 3d 608, 415 N.E.2d 1192; but see *People v. Gore* (1983), 116 Ill. App. 3d 780, 452 N.E.2d 583; see also *People v. Lewis* (1984), 103 Ill. 2d 111 (stipulations regarding psychiatric testimony that would have been given formed proper basis for fitness finding).) This analogy to a fitness hearing, however, is misplaced, as the rationale for precluding a stipulation to the fact of fitness at such a hearing is that

> "[i]f a defendant is insane and unable to answer for himself, he certainly is in no position to authorize his counsel to stipulate, nor is counsel warranted in stipulating, to his restoration, which is the very issue [to be tried]." (*People v. Reeves* (1952), 412 Ill. 555, 560-61, 107 N.E.2d 861, 864; see *People v. Lewis* (1984), 103 Ill. 2d 111.)

Whereas a fitness hearing is held to preserve a defendant's constitutional right of due process not to be placed on trial while unfit (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677), a hearing under the guilty but mentally ill statute is directed toward providing a means of

treatment for a criminally responsible but mentally ill defendant. (*People v. Booth* (1982), 414 Mich. 343, 324 N.W.2d 721; see *People v. Dalby* (1983), 115 Ill. App. 3d 35, 450 N.E.2d 31.) The mere fact, moreover, that a defendant suffers from some mental disturbance or requires psychiatric treatment does not reflect upon the defendant's ability to understand the proceedings against him or to assist in his defense. (*People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.) Since, in the instant case, there was no question as to the defendant's mental competency at the time of his plea proceeding, we cannot say that the use of stipulated psychiatric evidence was unwarranted under the rationale of the *Greene* and *Reeves* decisions.

■ The defendant further contends that the trial court failed to find that the defendant was mentally ill at the time of the offense as there was insufficient information before the court upon which to make such a finding. Although, as the defendant asserts, the court made no express finding of mental illness in accepting the defendant's plea, we believe the information contained in Dr. Boyd's reports, as well as the facts of the occurrence set forth by the State, were adequate to "satisfy" the court "that there [was] a factual basis that the defendant was mentally ill at the time of the offense" (Ill. Rev. Stat. 1981, ch. 38, pars. 113—4(d), 115—2(b)(3)) as required by statute.

While Dr. Boyd's first report was mistakenly directed toward the defendant's competency to stand trial, this report contained a diagnosis of a personality disorder suffered by the defendant, as well as a history of past mental problems by the defendant. The report further contained information regarding the defendant's relationship to his wife, who was the victim of the attempted murder, in the months immediately prior to the offense. (*Cf. People v. Greenfield* (1975), 30 Ill. App. 3d 1044, 333 N.E.2d 36 (defendant's history and relationship to his wife, who was victim of attempted murder for which defendant was charged, were relevant to his mental condition).) Finally, the report contained the defendant's account of the occurrence itself, including information regarding the defendant's intake of alcohol and drugs on the evening preceding the offense.

Dr. Boyd's second report, though inconclusive on the ultimate issue of whether the defendant was able to appreciate the criminality of his conduct at the time of the offense, focused on the extent and the effect of the substances ingested by the defendant prior to his attack upon his ex-wife. From this information and the information contained in the first report, it could reasonably be concluded that the defendant suffered from "a substantial disorder of thought, mood, or behavior" at the time of the commission of the offense "which im-

paired [his] judgment" (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(d)). Further, Dr. Boyd's report left open the possibility, even assuming the defendant's intake of alcohol and drugs, that the defendant was able to appreciate the criminality of his conduct. The court could have concluded from the circumstances of the offense set forth by the State, including the multiple stabbings and the defendant's statements at the time of the attack, that the defendant's judgment was not in fact impaired to the extent that he was unable to appreciate the wrongfulness of his behavior.

Because of the information before the court, it could properly find that the defendant was guilty but mentally ill despite the lack of a conclusive psychiatric opinion on this issue. In *People v. Bazzi* (1981), 113 Mich. App. 606, 318 N.W.2d 484, the trial court, under Michigan's comparable statute, accepted a plea of guilty but mentally ill although none of the psychiatric reports before it contained a finding that the defendant was mentally ill. One of the examiners had concluded that, despite the defendant's medical and personal problems resulting in several terms of hospitalization in a mental institution, the defendant was neither mentally ill nor insane at the time the offense was committed. The reports of two other examiners stated that the defendant was insane at the time he committed the criminal act. In reviewing the trial court's conclusion that the defendant was mentally ill at the time of the offense, the *Bazzi* court noted that "a psychiatric evaluation which is admitted as evidence serves only as an aid to the court." (113 Mich. App. 606, 609, 318 N.W.2d 484, 486.) While none of the examiners had found that the defendant was mentally ill but not insane, the court held that the trial court's conclusion was sustained by the substance of the reports as well as by the defendant's statements at the plea proceeding. Similarly, in the instant case, we believe there was a sufficient basis in the reports prepared by Dr. Boyd and stipulated to by the defendant for the court to accept the defendant's plea of guilty but mentally ill.

We therefore find no error in the court's acceptance of the defendant's plea, and we affirm the judgment denying the defendant's motion to withdraw his plea.

Affirmed.

HARRISON and KASSERMAN, JJ., concur.